**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**Before: The Hon. Timothy M. Reif, Judge**

| | |
|---|---|
| Salvi Chemical Industries Ltd.,<br><br>Plaintiff,<br>v.<br><br>United States,<br><br>Defendant. | Court No. 26-02569 |

# PLAINTIFF'S MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD WITH EVIDENCE OF MATERIAL FALSE CERTIFICATION BY DEER PARK GLYCINE, LLC / GEO SPECIALTY CHEMICALS, INC.

## Introduction

Plaintiff Salvi Chemical Industries Ltd. ("SCIL") respectfully moves this Court, pursuant to USCIT Rule 81 and the Court's inherent authority over the integrity of the administrative record before it, for an order directing the Department of Commerce ("Commerce") to expand the administrative record to include evidence demonstrating that the sole domestic interested party in the proceedings below, Deer Park Glycine, LLC / Geo Specialty Chemicals, Inc. ("DPG/GEO"), submitted a materially false certification to Commerce on December 10, 2025.

That certification affirmatively represented DPG/GEO to be a current domestic producer of glycine and the embodiment of the domestic industry under 19 U.S.C. § 1677(4)(A). Such representation is not accurate. DPG/GEO's own President had sent a written customer notice two days earlier, on December 8, 2025, stating that glycine production at Deer Park had been shuttered "effective immediately." DPG/GEO made no disclosure of this fact to Commerce. Commerce issued its Final Results on February 27, 2026, in reliance on DPG/GEO's uncorrected certification. The evidence of these material false statements did not arise until after the final determination by the Department. Notwithstanding the clear and uncontroverted evidence of the false statements, the Department failed to place such evidence on the record and otherwise failed to protect the proceeding. While expanding the record to include this information is extraordinary, as discussed below, it is one of the limited exceptions to the normal review limited to the record.

Commerce's June 16, 2026, refusal to consider this evidence — on the procedural ground that the matter is now before this Court — has created a self-reinforcing deadlock that, unless resolved by this Court, will result in judicial review of a record that is demonstrably, materially, and irreparably incomplete. This Court has the authority and the obligation to resolve that deadlock.

# TABLE OF CONTENTS


Table of Contents ..... 3

Table of Authorities ..... 4

I. Question Presented ..... 5

1. Whether the record should be expanded to include evidence of fraudulent certifications ..... 5

II. Statement of Facts ..... 5

A. The Underlying Proceedings ..... 5

B. DPG/GEO's False Certification of December 10, 2025 ..... 6

C. Physical Evidence of Permanent Cessation Confirmed May 23, 2026 ..... 7

D. DPG/GEO's Non-Response to Evidentiary Demands ..... 8

E. Commerce's Refusal and the Resulting Administrative Deadlock ..... 8

III. Summary of Argument ..... 9

IV. Argument ..... 11

A. This Court Has Authority to Order Supplementation of the Record ..... 11

B. The False Certification Constitutes Material Fraud on the Proceeding ..... 13

(i) DPG/GEO's Own President's December 8, 2025 Customer Notice ..... 13

(ii) The Materially False December 10, 2025 Certification ..... 13

(iii) Physical Inspection Evidence of May 23, 2026 ..... 14

(iv) DJG/GEO's Complete Failure to Rebut ..... 15

C Commerce's Refusal to Act Creates an Impermissible Deadlock ..... 15

D. DPG/GEO's Silence on Production Evidence Is Itself Probative ..... 17

E. The Chattem Intervention Does Not Cure DPG/GEO's Fraud ..... 18

V. Relief Requested ..... 19

VI. Statement of Consent ..... 20

VII. Conclusion ..... 20

# TABLE OF AUTHORITIES

## Cases

*Doria Mining & Engineering Corp. v. Morton,* 608 F.2d 1255 (9th Cir. 1979) ....................11

*Florida Power & Light Co. v. Lorion,* 470 U.S. 729 (1985) ....................11

*Home Products International, Inc. v. United States,* 633 F.3d 1369 (Fed. Cir. 2011) ....................passim

*Nippon Steel Corp. v. United States,* 458 F.3d 1345 (Fed. Cir. 2006) ....................17

*Shenzhen Xinboda Industrial Co. v. United States,* 180 F. Supp. 3d 1305 (CIT 2016) ....................12

*SKF USA Inc. v. United States,* 263 F.3d 1369 (Fed. Cir. 2001) ....................19

*Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352 (Fed. Cir. 2008) ....................10, 12, 16

*US Magnesium LLC v. United States,* 895 F. Supp. 2d 1319 (Ct. Int'l Trade 2013) ....................15

*Walls v. United States,* 582 F.3d 1358 (Fed. Cir. 2009) ....................11

## Statutes

18 U.S.C. § 1001 (False Statements Act) ....................6, 9, 14

19 U.S.C. § 1516a (Judicial Review of Antidumping Determinations) ....................11

19 U.S.C. § 1675(b) (Changed Circumstances Review) ....................16

19 U.S.C. § 1677(4)(A) (Definition of Domestic Industry) ....................2, 6,14

19 U.S.C. § 1677e(a)-(b) (Facts Available and Adverse Inferences) ....................8, 10,17

19 U.S.C. § 1677m(b) (Certification of Accuracy) ....................14

28 U.S.C. § 1581(c) (CIT Jurisdiction) ....................11,18

## Regulations

19 C.F.R. § 351.216 (Changed Circumstances Review) ....................16

19 C.F.R. § 351.222(g)(1)(i)-(ii) (Revocation; Changed Circumstances) ....................16

19 C.F.R. § 351.303(g) (Certification of Factual Information) ....................6, 9, 13,

## I. QUESTION PRESENTED

1. Whether the record should be expanded to include evidence of fraudulent certifications

Whether this Court should order the administrative record supplemented to include evidence that the sole domestic interested party, DPG/GEO, submitted a materially false certification to Commerce on December 10, 2025 — representing itself as a current domestic glycine producer two days after its own President notified customers that production had been permanently shuttered — where that false certification was the primary factual basis for the agency's Final Results, where Commerce has refused to consider the fraud evidence on the ground that the matter is in litigation, and where, without supplementation, SCIL will be left without any forum in which to challenge the fraudulent basis of the determination.

## II. STATEMENT OF FACTS

### A. The Underlying Proceeding

This case concerns the Changed Circumstances Review ("CCR") of the antidumping duty order on glycine from the People's Republic of China, Case No. A-570-836. DPG/GEO participated throughout the 2024-2026 CCR as the sole domestic interested party. Commerce's Final Results, issued February 27, 2026, relied principally on a single third-party document submitted by DPG/GEO and on

DPG/GEO's certified status as an active domestic glycine producer. The Final Results were published in the Federal Register on March 4, 2026.

**B. DPG/GEO's False Certification of December 10, 2025**

On December 10, 2025, DPG/GEO, ”), the sole domestic party participating in the matter below, submitted certain factual information to Commerce. That submission was accompanied by a certification, executed pursuant to 19 C.F.R. § 351.303(g) and made under the sanctions of 18 U.S.C. § 1001, representing that DPG/GEO was a current domestic producer of glycine and the embodiment of the domestic industry under 19 U.S.C. § 1677(4)(A).

Two days earlier, on December 8, 2025, DPG/GEO’s own President had transmitted a written notice to customers stating that glycine production at Deer Park, Texas had been shuttered “effective immediately.” That notice was signed and transmitted in the ordinary course of DPG/GEO’s business. DPG/GEO did not disclose this notice to Commerce at the time of its December 10, 2025, submission or at any point thereafter during the proceeding.

The December 10, 2025, certification was directly contradicted by DPG/GEO’s own President’s letter, issued 48 hours earlier. The certification was nonetheless accepted by Commerce without inquiry and formed a critical factual foundation for the Final Results.

### C. Physical Evidence of Permanent Cessation Confirmed May 23, 2026

In May 2026, SCIL obtained concrete, firsthand evidence confirming that DPG/GEO had permanently ceased all glycine production. This included statements from employees of DPG and a physical visit to the DPG facility which established that production had ceased and that the nature of the equipment meant that production could not resume. Evidence was also placed on the record that DPG had placed the facility up for sale as a real estate development. On May 23, 2026, SCIL's principals conducted a physical inspection of the Deer Park, Texas facility, which established the following:

> **A. Complete Absence of Electrical Power:** No electricity was being supplied to any production area of the facility. Electrical panels and switchgear were visibly disconnected, consistent with cessation of production for an extended period.
>
> **B. Advanced Rusting and Physical Deterioration:** Reaction vessels, process pipework, storage tanks, and associated process equipment exhibited extensive rust accumulation and physical deterioration entirely consistent with at least six months of continuous non-use.
>
> **C. Confirmation by Facility Personnel:** The Plant Manager and Maintenance Supervisor confirmed that the facility has not produced glycine since approximately November 2025 and that there are no plans whatsoever for resumption. SCIL stated its willingness to provide the names of these individuals to Commerce under APO for verification.
>
> **D. Active Marketing of 56-Acre Site for Sale:** The 56-acre Deer Park property is actively being marketed for sale on an "as is, where is" basis by Cushman & Wakefield, with competing purchase offers under evaluation.

> **E. Confirmed Permanent Decommissioning:** The Plant Manager confirmed that a teardown contractor is to be engaged, equipment surrendered as consideration for demolition costs, and the real estate redeveloped for warehouse or logistics use. The HCN-based production route is confirmed commercially unviable, with no alternative technology under consideration.

SCIL submitted this evidence to Commerce on May 28, 2026 (bar code 4924126), including the affidavit of Nirav Salvi, photographs, short videos of the facility, real estate marketing materials, and other supporting documents.

### D. DPG/GEO's Non-Response to Evidentiary Demands

Commerce circulated SCIL's submission. DPG/GEO filed a response on June 11, 2026 — but notably without producing a single contemporaneous production record, utility bill, HCN invoice, or payroll record to rebut any of the four independent categories of evidence presented by SCIL. DPG/GEO's complete silence in the face of demands for uniquely available production evidence is itself significant under the adverse inference doctrine of 19 U.S.C. § 1677e(b).

### E. Commerce's Refusal and the Resulting Administrative Deadlock

On June 16, 2026, Commerce issued a Memorandum to the File stating that, because this matter is currently in litigation before this Court, the agency is "unable to consider Salvi's filings and any other subsequent comments." Commerce has continued to refuse to engage with the evidence of DPG/GEO's false certification.

This refusal has produced a self-reinforcing procedural deadlock: Commerce declines to consider the fraud evidence because the matter is before this Court; yet because the agency declines to act, the fraud evidence is excluded from the certified administrative record that this Court will review. Without this Court's intervention, SCIL will have no forum in which to challenge a determination that was built on a materially false foundation.

## III. SUMMARY OF ARGUMENT

First, this Court has authority under its inherent equitable powers and under the well-established fraud exception to the record rule to order supplementation of the administrative record where new evidence demonstrates that the underlying agency determination was obtained by material fraud. *Home Products International, Inc. v. United States,* 633 F.3d 1369, 1379 (Fed. Cir. 2011).

Second, the evidence already before this Court — DPG/GEO's own President's December 8, 2025, customer letter shuttering production "effective immediately," followed 48 hours later by DPG/GEO's certified representation to Commerce that it was an active domestic producer — satisfies the prima facie standard for fraud on the proceeding established by the Federal Circuit in *Home Products.* The certification was made under oath, pursuant to 19 C.F.R. § 351.303(g), and subject to the criminal sanctions of 18 U.S.C. § 1001. The four

independent categories of physical and testimonial evidence confirmed during the May 23, 2026, inspection are unrebutted.

Third, Commerce's refusal to act on the ground that the matter is in litigation constitutes an abuse of discretion. *Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352, 1361 (Fed. Cir. 2008), makes clear that an agency's power to reconsider "is even more fundamental when it is exercised to protect the integrity of its own proceedings from fraud." Commerce cannot use procedural posture as a shield to insulate from review a determination that is, on its face, predicated on a materially false certification.

Fourth, DPG/GEO's total failure to produce any contemporaneous production documentation in response to SCIL's evidentiary submission is itself probative. Under 19 U.S.C. § 1677e(b), a party that withholds uniquely available information exposes itself to adverse inferences. The absence of any utility bills, HCN invoices, or production batch records, in the face of explicit demands, reinforces the inference that no such records exist because production had already ceased.

Finally, and dispositive of this issue, this Court denied Chattem's motion to intervene by Opinion and Order dated August 13, 2026, Slip Op. 26-93, Court No. 26-02569, holding that Chattem was not a party to the underlying CCR and that permissive intervention is categorically unavailable in actions arising under 28

U.S.C. § 1581(c). The Chattem issue is therefore fully and finally resolved in SCIL's favor, and no domestic interested party now stands in opposition to this Motion.

## IV. ARGUMENT

### A. This Court Has Authority to Order Supplementation of the Administrative Record

Judicial review of Commerce's antidumping determinations is governed by 19 U.S.C. § 1516a and 28 U.S.C. § 1581(c). The general rule is that such review is limited to the administrative record. *Florida Power & Light Co. v. Lorion,* 470 U.S. 729, 743 (1985). However, this "record rule" is not absolute and admits of well-recognized exceptions. *Walls v. United States,* 582 F.3d 1358, 1367 (Fed. Cir. 2009). One of the primary exceptions is where the original record is tainted by fraud.

The controlling authority is *Home Products International, Inc. v. United States,* 633 F.3d 1369 (Fed. Cir. 2011). In *Home Products,* the Federal Circuit held that "where there is new evidence indicating that the original record was tainted by fraud, reopening may be appropriate." *Id.* at 1379. In *Home Products* the Federal Circuit expressly adopted the reasoning of the Ninth Circuit in *Doria Mining & Engineering Corp. v. Morton,* 608 F.2d 1255, 1257-59 (9th Cir. 1979), holding that "the reviewing court may consider evidence extrinsic to the record in determining whether such allegations are meritorious" where a party alleges that new evidence

shows the decision under review was obtained by fraud on the administrative proceeding. *Home Products,* 633 F.3d at 1379.

The Federal Circuit in *Home Products* also articulated the compelling policy rationale: "Newly discovered evidence of fraud and perjury in an administrative proceeding will not be found in the administrative record. If the reviewing court, in the face of an allegation that such evidence exists and that administrative remedies have been exhausted, nevertheless confines itself to consideration only of evidence in the record, the party seeking review is left without any forum in which to argue the allegedly fraudulent basis of the administrative judgment." *Id.* at 1379-80 (emphasis added). This is precisely the impasse SCIL faces.

Additionally, this Court has inherent authority over the completeness of the record before it. As the Federal Circuit held in *Tokyo Kikai Seisakusho, Ltd. v. United States,* 529 F.3d 1352, 1360 (Fed. Cir. 2008), "courts have uniformly concluded that administrative agencies possess inherent authority to reconsider their decisions, subject to certain limitations, regardless of whether they possess explicit statutory authority to do so." That inherent authority is "even more fundamental when it is exercised to protect the integrity of its own proceedings from fraud." *Id.* at 1361. See also *Shenzhen Xinboda Industrial Co. v. United States,* 180 F. Supp. 3d 1305, 1324 (CIT 2016) (applying *Tokyo Kikai* in the context of Commerce's inherent reconsideration authority in antidumping proceedings).

### B. The False Certification Constitutes Material Fraud on the Proceeding

SCIL has satisfied the prima facie standard for fraud on the proceeding. The Federal Circuit in *Home Products* requires "clear and convincing new evidence sufficient to establish a prima facie case that the agency proceedings under review were tainted by material fraud." 633 F.3d at 1378. The following four independent and unrebutted categories of evidence satisfy this standard.

#### (i) DPG/GEO's Own President's December 8, 2025 Customer Notice

DPG/GEO's own President sent a written customer notice on December 8, 2025, stating that glycine production at Deer Park was shuttered "effective immediately." This document was transmitted in the ordinary course of business, is signed by DPG/GEO's own principal, and is not disputed. It establishes that, as of December 8, 2025, DPG/GEO's own President knew that glycine production had permanently ceased.

#### (ii) The Materially False December 10, 2025 Certification

Two days later, on December 10, 2025, DPG/GEO submitted factual information to Commerce accompanied by a certification executed pursuant to 19 C.F.R. § 351.303(g). That regulation, as amended by the Final Rule published at 78 Fed. Reg. 42678 (July 17, 2013), requires the certifying official to attest to the accuracy and completeness of all factual information submitted, pursuant to 19

U.S.C. § 1677m(b). The certification was made under the criminal sanctions of 18 U.S.C. § 1001, which provides that whoever "knowingly and willfully... makes any materially false, fictitious, or fraudulent statement or representation" to any executive agency of the United States "shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 1001(a)(2).

DPG/GEO's December 10, 2025, certification affirmatively represented it to be a domestic producer of glycine — the embodiment of the domestic industry under 19 U.S.C. § 1677(4)(A). That representation was directly contradicted by DPG/GEO's President's own letter issued 48 hours earlier. The 48-hour interval between DPG/GEO's own announcement of permanent closure and its sworn certification to Commerce of active production admits of no innocent explanation.

**(iii) Physical Inspection Evidence of May 23, 2026**

The physical inspection of the Deer Park, Texas facility on May 23, 2026, produced four independent categories of direct evidence — disconnected electrical infrastructure, advanced equipment corrosion consistent with at least six months of non-use, on-site personnel confirmation of cessation since November 2025 with no planned resumption, and active real estate marketing of the 56-acre site by Cushman & Wakefield on an "as is, where is" basis. This evidence is documented in the sworn affidavit of Nirav Salvi, supported by photographs, videos, and real estate marketing materials, all filed with Commerce on May 28, 2026.

#### (iv) DPG/GEO's Complete Failure to Rebut

DPG/GEO was given a full opportunity to respond to SCIL's submission and filed a response on June 11, 2026. It produced not a single contemporaneous document to rebut SCIL's evidence: no utility bill, no HCN delivery invoice, no production batch record, no payroll record, and no engineering certification of operational status. The complete absence of any such documentation, in response to an explicit and itemized evidentiary challenge by SCIL, is itself highly probative.

As this Court noted in *US Magnesium LLC v. United States,* 895 F. Supp. 2d 1319, 1325 (Ct. Int'l Trade 2013), Commerce commits an abuse of discretion when it fails to address prima facie evidence of material misrepresentation raised while proceedings are open or active, because "allegations attacking the foundational integrity of a proceeding demand active policing rather than passive procedural dismissal." Administrative efficiency cannot be used to validate a determination built on a fabricated or defunct domestic-industry footprint.

### C. Commerce's Refusal to Act Creates an Impermissible Administrative Deadlock

Commerce's June 16, 2026, Memorandum to the File refused to consider SCIL's fraud evidence on the ground that this matter is "in litigation before the CIT." This position is legally untenable for three independent reasons.

First, the Federal Circuit in *Tokyo Kikai* expressly held that Commerce's "power to reconsider is even more fundamental when, as here, it is exercised to protect the integrity of its own proceedings from fraud." 529 F.3d at 1361. Pendency of litigation does not extinguish Commerce's inherent authority to act to protect the integrity of its proceedings; if anything, the existence of a parallel judicial proceeding heightens — not diminishes — Commerce's obligation to ensure that what it has certified as the administrative record is accurate.

Second, Commerce's authority to conduct a changed circumstances review under 19 U.S.C. § 1675(b) and 19 C.F.R. § 351.216 is not suspended by the filing of a petition for CIT review. Under 19 C.F.R. § 351.222(g)(1)(ii), Commerce may revoke an order where "other changed circumstances sufficient to warrant revocation exist." Permanent cessation of production by the sole domestic producer is precisely such a circumstance. Commerce is not disabled from exercising this authority by the pendency of litigation.

Third, the deadlock Commerce has created is irremediable by any means other than this Court's intervention. Commerce will not act because the matter is before this Court. This Court has been asked to review a record that Commerce has certified as complete. But that record does not include evidence that the foundational certification underpinning the Final Results was false. This Court has both the authority and the obligation to resolve this deadlock by ordering supplementation of

the record, or alternatively by remanding to Commerce with instructions to consider the fraud evidence and supplement the record accordingly.

### D. DPG/GEO's Silence on Production Evidence Is Itself Probative Under 19 U.S.C. § 1677e(b)

Under 19 U.S.C. § 1677e(a), when an interested party "withholds information that has been requested by the administering authority... or... significantly impedes a proceeding," Commerce shall use facts otherwise available. Under § 1677e(b), where Commerce finds that an interested party "has failed to cooperate by not acting to the best of its ability to comply with a request for information," Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."

SCIL's May 28, 2026, submission explicitly identified the production records, utility bills, and HCN invoices that DPG/GEO uniquely possesses and that would conclusively resolve the question of whether DPG/GEO was producing glycine at the time of its December 10, 2025, certification. DPG/GEO filed a response on June 11, 2026, without producing any of these documents. The failure of a party to produce uniquely available evidence that would resolve the central factual dispute is probative under Commerce's consistent practice. See also *Nippon Steel Corp. v. United States,* 458 F.3d 1345, 1352 (Fed. Cir. 2006) (the adverse inference statute "reflects a common-sense inference that a party with nothing to hide would have

provided the information requested"). DPG/GEO's complete documentary silence speaks for itself. The supplemented record should include not only SCIL's evidence but also Commerce's adverse-inference findings arising from DPG/GEO's failure to produce verifying documentation.

### E. The Chattem Intervention Does Not Retroactively Cure DPG/GEO's Fraud

On August 13, 2026, this Court denied Chattem's motion to intervene in its entirety, holding that Chattem was not a party to the underlying CCR proceeding and therefore lacked the unconditional right to intervene under 28 U.S.C. § 2631(j)(1), and further that permissive intervention is not available in actions arising under 28 U.S.C. § 1581(c). See Slip Op. 26-93, *Salvi Chemical Industries Ltd. v. United State*s, Court No. 26-02569 (Ct. Int'l Trade Aug. 13, 2026).

The integrity of the Final Results must be assessed based on the facts as they existed when those Results were issued. The information certified in DPG/GEO's false certification was the primary factual basis on which Commerce relied. Chattem was not a participant in the CCR. Chattem's subsequent appearance does not transform DPG/GEO's false December 10, 2025, certification into a true one, does not supply the production evidence that DPG/GEO withheld, and does not remedy the foundational defect in the administrative record.

The question before this Court on SCIL's motion is the integrity of what Commerce did based on the record before it. Post-determination substitution of a different domestic producer cannot resolve that question. The Court must assess the record as it was at the time Commerce acted. See *SKF USA Inc. v. United States,* 263 F.3d 1369, 1382 (Fed. Cir. 2001) (agency action reviewed based on the reasons given and the record at the time of the decision).

## V. RELIEF REQUESTED

For the foregoing reasons, SCIL respectfully requests that this Court:

**(1)** Order Commerce to supplement the administrative record to include: (a) SCIL's May 28, 2026, submission (bar code 4924126) in its entirety, including the affidavit of Nirav Salvi, photographs, videos, and real estate marketing materials; and (b) all subsequent submissions by any party relating to DPG/GEO's production status;

**(2)** Order DPG/GEO to produce to Commerce, within 21 days of any order granting this Motion: (a) electricity consumption records and utility bills for the Deer Park facility for January 2025 to present; (b) production records (glycine output by month) for January 2025 to present; (c) HCN purchase invoices and delivery records for January 2025 to present; and (d) a sworn statement identifying the date on which DPG/GEO determined to permanently

cease glycine production, by whom that decision was made, and whether and when that determination was disclosed to Commerce or to DPG/GEO's counsel during the CCR;

**(3)** In the alternative, remand the matter to Commerce with instructions to: (a) accept and consider SCIL's May 28, 2026, submission; (b) compel DPG/GEO to produce the production documentation identified above; (c) make findings on whether DPG/GEO's December 10, 2025 certification was materially false; and (d) report back to this Court within 90 days; and

**(4)** Grant such other and further relief as the Court deems just and appropriate, including instruction to U.S. Customs and Border Protection to maintain suspension of liquidation for all unliquidated entries subject to the order pending resolution of this motion.

## VI. STATEMENT OF CONSENT

Pursuant to Rule 7(f), this is not a type of motion for which consultation is required. As such, there is no statement of consent.

## VII. CONCLUSION

The administrative record before this Court rests on a certification that was contradicted by DPG/GEO's own President two days before it was submitted. DPG/GEO knew its production had permanently ceased when it certified the

contrary to Commerce. Commerce's Final Results, issued in reliance on that certification, cannot withstand scrutiny. Commerce's refusal to address this fraud — on the ground that the matter is in litigation — has left SCIL without any administrative remedy and has created a deadlock that only this Court can resolve.

This Court has the authority, under *Home Products* and its inherent equitable jurisdiction over the integrity of the record before it, to grant the relief requested. It should do so.

Respectfully submitted,

/s/ David Craven

**David J. Craven**
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613
(773) 709-8506
David.craven@tradelaw.com

Counsel to Salvi Chemical Industries Ltd.

Dated: September 3, 2026